# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00325-CR

**David Edwin Wiede, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT NO. 97-007, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## O P I N I O N

In 1997, David Wiede pleaded guilty to a charge of possession of methamphetamine and was sentenced to ten years in prison; imposition of the sentence suspended and he was placed on probation for ten years.[1] In 2002, the State moved to revoke his probation, alleging that he had violated the terms of his probation by again possessing methamphetamine and by failing to pay fines and fees. Wiede pleaded not true to all the allegations in the State's motion and moved to suppress evidence obtained as the result of an unlawful search of his car. In its written order, the court denied Wiede's motion, found all the State's allegations to be true, revoked Wiede's probation, and sentenced him to eight years in prison.

---

[1] At the same time he pleaded guilty to possession of marihuana. He was sentenced to two years in prison, imposition of sentence was suspended and he was placed on probation for five years. Wiede successfully completed that probationary term, and that offense is not before us.

On appeal, Wiede contends that the trial court erred in revoking his probation by two points of error (1) that the district court erred by admitting into evidence the methamphetamine related to the new offense, and (2) that the district court erred by considering his failures to pay fines and fees because the State waived those grounds at trial. The State contends that the evidence was properly admitted, but concedes that it waived at trial the administrative grounds for revocation and that the court consequently erred by revoking Wiede's probation on those grounds. Because we hold that the search of Wiede's car was an unreasonable search under the Fourth Amendment of the United States Constitution, we will reverse the judgment and remand the cause to the trial court for further proceedings.

**BACKGROUND**

The following is a summary of testimony from the combined hearing on the motion to suppress and the motion to revoke probation. The hearing occurred on two days a week apart.

At approximately 7:00 a.m. on April 17, 2002, motorist Roy Tambunga stopped at the T-intersection of Siebert Drive and F.M. 150 behind an 18-wheel truck loaded with sod. He waited while the truck turned left onto F.M. 150. As Tambunga turned right onto F.M. 150, he saw Wiede's car pass by. Although he was unsure of Wiede's speed, he testified that the car was traveling "at least the speed limit, at least 60 miles an hour." Looking through his side view mirror, Tambunga watched as Wiede collided with the truck that had turned onto the road in front of him. A photograph of the accident scene introduced into evidence shows long skid marks caused by Wiede's car prior to the collision. The truckdriver continued driving as if unaware the accident had occurred. Tambunga stopped to check Wiede's condition. Wiede's head was bleeding and his arm

2

appeared to have a compound fracture. (Wiede later was found also to have a fractured pelvis that required a plate and multiple screws to mend.) Tambunga testified that Wiede was conscious but dazed, in pain, and moaning occasionally. A department of public safety trooper stopped and called in the accident.

Tambunga remained near Wiede's car and saw him moving around and looking back at Tambunga. At one point, Wiede's movements led Tambunga to believe he was going to light a cigarette. Leaning forward to dissuade Wiede from smoking, Tambunga saw Wiede instead cupping an item in his hand and pushing it between the console and the front seat; Tambunga never saw the item. Another peace officer arrived. After Wiede was removed from the car and taken to an ambulance, Tambunga told the unidentified officer, "You may want to check the seat, because he was messing around with something there."[2] The officer reached into the car and pulled out an empty plastic bag less than two inches square that Tambunga said was too small to be what Wiede had held. The officer reached in again and pulled out a larger plastic bag that appeared to contain about a half inch of an off-white powder.

Tambunga testified that after stopping he was never more than eight feet from Wiede until the emergency medical technicians moved Wiede to the ambulance. Tambunga did not hear the officers ask Wiede where he wanted his car taken. Tambunga testified that he did not see any

---

[2] Tambunga testified that the unidentified officer was possibly a sheriff's deputy or a Kyle city policeman. Tambunga testified that he was new to the area and did not know the area departments' uniforms. He was certain, however, that the person was neither an emergency medical technician nor a state trooper.

officer search the car after finding the baggies or write down anything on a form. Tambunga was at the scene until the tow truck hooked up to Wiede's car.

DPS trooper Christopher McGuairt testified that he and other peace officers were driving to a training session in San Marcos when they came upon the accident scene and stopped. (Because McGuairt is based in Fort Stockton, he stopped to secure the scene but did not investigate the accident.) After Tambunga described the vehicle Wiede collided with, McGuairt drove on and stopped the truck driver, who was apparently unaware the collision had occurred; McGuairt and the truck returned to the scene. McGuairt said that Tambunga then told him and the unidentified officer something[3] that prompted the other officer to reach into the car near the center console and retrieve a plastic bag containing an off-white powdery substance. McGuairt testified that, based on Tambunga's statement, the officer looked only by the console and did not search the car generally.

McGuairt, who was unfamiliar with the uniforms of local law enforcement agencies, was uncertain whether the person who retrieved the contraband was a deputy sheriff or an officer of another department. Based on the person's uniform, badge, sidearm, and conversation with other peace officers, McGuairt testified that the person was either an officer or impersonating one; McGuairt was reasonably certain that the person was an officer.

On the second day of the hearing, McGuairt testified that the severity of the wreck gave him concern for Wiede's health and well-being. Moreover, Tambunga's statement made him suspect that the item stashed near the console might be a controlled substance, that Wiede might be

---

[3] The Court sustained Wiede's hearsay objection to McGuairt's testimony about what Tambunga said.

under the influence of that controlled substance, that medical personnel treating Wiede would need to know what that substance was, and that the nature of the substance could affect civil liability regarding the accident. However, he did not inform the medical personnel about the recovered substance, did not remind the investigating officer to notify the medical personnel to test Wiede for controlled substances, and did not hear the investigating officer do so.

DPS Trooper Brian Freeman investigated the accident. He testified that the collision rendered Wiede's car inoperable. Freeman said that McGuairt gave him a clear plastic bag suspected of containing a powdery controlled substance. Freeman testified that his supervisor conducted an inventory of the car, but the inventory report listed only the baggie seized from the car and did not list items in plain view in the car, such as the many compact discs that a friend of Wiede's later retrieved. Freeman testified that Wiede's vehicle was towed to an impound lot, but not to a DPS facility.

Wiede was hospitalized following surgery and was concerned that the items left in his car might be stolen. Wiede's friend, David Duggan, testified that he went to the lot where Wiede's car was towed and removed valuable items at Wiede's request. Duggan testified that he removed a compact disc player, several CDs, a CD changer, a stereo system, an amplifier, Snap-on tools, Oakley sunglasses, clothes, a silver ring, a gold chain, a nice winter coat, boots, two credit cards, and change. Duggan testified that the items appeared valuable and that Wiede tended to have top-of-the-line possessions.

The district court orally denied the motion to suppress. The court held that the drugs were not found pursuant to an inventory, but as part of an investigation into what Wiede had

5

concealed at the scene of this accident. Alternatively, the court cited the officer's role as a community caretaker as a basis for the search.

The hearing continued on the motion to revoke. Wiede testified, denying ownership or knowledge of the drugs found in his car. His former sister-in-law, Kathleen Vann, testified that she had borrowed the car and, after invoking her right not to testify, rescinded that invocation and testified that the methamphetamine found in the car was hers. The district court then found the allegation of methamphetamine possession true and revoked Wiede's probation.

## DISCUSSION

Wiede raises two points of error regarding the admission of evidence. He contends that the district court erred by denying his motion objecting to the admission into evidence of the baggie containing the methamphetamine, contending that the officers lacked any legal basis for their warrantless search of his vehicle. He also asserts that the State failed to establish a chain of custody of the baggie.

In reviewing a ruling on a challenge to the admission of evidence, we give almost total deference to the trial court's determination of historical facts and review the court's application of search and seizure law de novo. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). When the trial court does not make explicit findings of historical facts, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record. *Id*. We must affirm the trial court's ruling if it can be upheld on any valid theory of law applicable to the case—even if the trial court did not base its decision on the

6

applicable theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Romero v. State*, 800 S.W.2d 539, 543-544 (Tex. Crim. App. 1990).

Once the defendant establishes that a police search was not supported by a warrant, the burden shifts to the State to prove the reasonableness of the search and seizure. *Russell v. State*, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986); *Mendoza v. State*, 30 S.W.3d 528, 531 (Tex. App.—San Antonio 2000, no pet.) (burden on State to prove reasonableness of warrantless search of vehicle). It is undisputed in this case that Wiede was not arrested and that the search was warrantless.

The dissent contends that we have failed to adhere to the standard of review. Indeed, the dissent correctly recites the standard of review for a probation revocation determination. *See Ortega v. State*, 860 S.W.2d 561, 564 (Tex. App.—Austin 1993, no pet.) (burden of proof on state to show violation of conditions of probation as alleged in motion by preponderance of the evidence and trial court's determination reviewed for abuse of discretion). However, the evidence on which a trial court bases its determination must be properly admitted in accordance with established search and seizure law. *See Gordon v. State*, 4 S.W.3d 32, 35 (Tex. App.—El Paso 1999, no pet.) (overlapping standards of review when considering suppression of evidence in decision to revoke probation); *State v. Barnett*, 790 S.W.2d 662 (Tex. App.—Austin 1990, no pet.) (applying standard of review for suppression in revocation of probation determination). Because the State only relies upon Wiede's possession of methamphetamine as grounds for the revocation of probation, our determination of whether the methamphetamine was properly admitted controls whether the trial court abused its discretion in this case. *See Gordon*, 4 S.W.3d at 38.

7

A number of possible justifications for the search of Wiede's car have been advanced in the State's brief, as well as by the dissent. The State asserts that the nature of the accident gave police probable cause to arrest Wiede and search his car for evidence either relating to traffic violations or other offenses. The State and dissent also contend that the search was valid under the officer's community caretaking function. The State concedes that police did not conduct an inventory search.

**Probable Cause**

The State contends that the circumstances at the scene provided probable cause to search Wiede's car for evidence related either to a traffic offense or possession of a controlled substance. An officer may conduct a warrantless search of a motor vehicle if the officer has probable cause to believe the vehicle contains evidence of a crime. *Powell v. State*, 898 S.W.2d 821, 827 (Tex. Crim. App. 1994). Police officers have the right to search an entire vehicle when they have probable cause to believe there is contraband in the vehicle but do not know where it is located. *United States v. Ross*, 456 U.S. 798, 825 (1982). Probable cause determinations in warrantless search situations are made using the same standard as searches involving warrants. *Whiteley v. Warden*, 401 U.S. 560, 566 (1971). To determine whether probable cause existed to believe evidence of a crime would be found in a certain place, we look at the totality of the circumstances to determine if there is a substantial basis for concluding that probable cause existed at the time of the questioned action. *See Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex. Crim. App. 1988), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681, 685 n.6 (Tex. Crim. App. 1991).

8

An officer's inarticulate hunch, suspicion, or good faith is insufficient to constitute probable cause. *Brown v. State*, 481 S.W.2d 106, 110 (Tex. Crim. App. 1972).

**Traffic offense**

The State contends that Wiede's apparent violation of traffic laws provided probable cause to support his arrest, and therefore a search of his vehicle. The State asserts that the evidence at the scene—the long skid marks, the damage to Wiede's car, the observation that he was traveling around the speed limit of 60 miles per hour—provided probable cause to believe that Wiede violated the requirement that he control his speed sufficiently not to collide with another vehicle entering the highway. *See* Tex. Transp. Code Ann. § 545.351(b)(2) (West 1999); *see also id*. § 543.001 ("Any peace officer may arrest without warrant a person found committing a violation of this subtitle.").

Courts permit a warrantless search of an automobile incident to the arrest of its occupants. *See New York v. Belton*, 453 U.S. 454, 460-62 (1981). Probable cause for an arrest exists where, at that moment, facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person in believing that a particular person has committed or is committing a crime. *See Smith v. State*, 739 S.W.2d 848, 851 (Tex. Crim. App. 1987). It is irrelevant that the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search. *Williams v. State*, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). Courts permit warrantless searches incident to arrest even if no arrest has

9

occurred at the time of the search, as long as the probable cause to support the arrest existed at the time of the search. *See Ballard v. State*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999) (admitting evidence from search of truck driven erratically by man with slurred speech and impaired balance, despite officer's statement that he did not form impression as to cause of impairment and absence of arrest); *see also Dyar v. State*, 59 S.W.3d 713, 716-17 (Tex. App.—Austin 2001), *aff'd*, 125 S.W.3d 460 (Tex. Crim. App. 2003) (admitting blood sample from intoxicated person pulled from wreckage in one-car accident and arrested in hospital).

The search in this case, however, was not incident to an arrest. Although the search incident to arrest can precede the arrest, the arrest must occur within the same encounter. In *Ballard*, the court of criminal appeals wrote:

> Moreover, the fact that the search incident to the arrest *preceded the formal custodial arrest by a few moments* is of no consequence under *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980) ("Once [Rawlings] admitted ownership of the sizable quantity of drugs found in [the] purse, the police clearly had probable cause to place [him] under arrest. Where *the formal arrest followed quickly* on the heels of the challenged search of [Rawlings'] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa.")

726 S.W.2d at 101 (emphases added). But here there was no arrest for the traffic violation a few moments after the search or later at the hospital. This search was not conducted incident to an arrest.

Nor did the probable cause for an arrest, without the arrest, provide reason for a warrantless search of the car. *See Knowles v. Iowa*, 525 U.S. 113, 114-18 (1998). In *Knowles*, an Iowa police officer stopped a driver for speeding and issued a citation rather than arresting the driver;

10

the officer then searched the car, found marihuana, and arrested the driver. The United States

Supreme Court held that the officer did not have reason to search the car. *Id*. Iowa courts had

denied Knowles's motion to suppress, citing an Iowa statute permitting a search incident to the

issuance of a citation for a traffic violation. *Id*. at 115. The Supreme Court concluded that a search

incident to arrest is permissible on two bases: (1) the need to disarm the suspect in order to take him

into custody, and (2) the need to preserve evidence for later use at trial. *Id*. at 117. The Supreme

Court found that neither basis was present in the search of Knowles's car. *Id*. at 117-18. Regarding

the need to preserve evidence, the Court wrote:

> Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car.
>
> Iowa nevertheless argues that a "search incident to citation" is justified because a suspect who is subject to a routine traffic stop may attempt to hide or destroy evidence related to his identity (e.g., a driver's license or vehicle registration), or destroy evidence of another, as yet undetected crime. As for the destruction of evidence relating to identity, if a police officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting him rather than merely issuing a citation. As for destroying evidence of other crimes, the possibility that an officer would stumble onto evidence wholly unrelated to the speeding offense seems remote.

*Id*. at 118. The Court reversed the conviction and remanded the cause.

The State's attempt to base the search on the alleged traffic violation makes this case

strikingly similar to *Knowles*. Although there was no citation issued here, the reasoning is

applicable. The officers had Tambunga's eyewitness testimony about Wiede's failure to control the

11

speed of his car, and they could see the long skid marks on the road and the damage to the car. Speeding offenses under the transportation code are strict liability offenses. *Nam Hoai Le v. State*, 963 S.W.2d 838, 841 (Tex. App.—Corpus Christi 1998, pet. ref'd). The State did not produce evidence or articulate any reason to believe that a search of the car—particularly, the space between the driver's seat and the center console—would produce additional evidence relevant to the offense of failing to control speed. The officer must have probable cause to believe that the car contains evidence of the crime under investigation, not evidence of some unrelated crime. *Powell*, 98 S.W.3d at 827.

### Other offenses

The State alternatively argues that probable cause existed to search the vehicle for a controlled substance based on Tambunga's observation of Wiede furtively hiding a small object. This furtive gesture, coupled with the nature of the accident, urges the State, gave the officers probable cause to believe that Wiede was driving while intoxicated (or under the influence of some substance) and that the hidden object was the intoxicant. The State need not obtain a warrant prior to searching an automobile if probable cause exists to believe it contains contraband. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Therefore, we look to see if the State presented evidence supporting probable cause to believe that Wiede was either driving while intoxicated or otherwise in possession of contraband.

Construing the evidence most favorably to the district court's decision, the police knew that a bystander had seen the injured driver of a wrecked vehicle reach across his body with

12

his uninjured arm while police were not watching and hide something smaller than his fist between the driver's seat and the center console.[4] Wiede was seriously injured, dazed, and moaning after the collision. But there is no evidence that he showed any signs of intoxication. Although Wiede was driving at or above the speed limit, there is no evidence that his driving before the collision was erratic. There is no evidence of any odors associated with intoxication or drug possession emanating from Wiede or his car. There is no indication that any alcohol, drugs, or drug paraphernalia were in plain view; the photo of the interior of the car shows only clutter. Because the officer who actually conducted the search of Wiede's car was never identified and did not testify, there is no evidence in the record as to his actual motivation for the search.

The court of criminal appeals has repeatedly held that a "furtive gesture," such as the one described by Tambunga, made while a person is stopped for a traffic offense does not establish probable cause for a search. *See Howard v. State*, 599 S.W.2d 597, 604-05 (Tex. Crim. App. 1979) (dipped down in seat toward steering wheel when stopped for failing to use turn signal); *Beck v. State*, 547 S.W. 266, 268-69 (Tex. Crim. App. 1976) (reached toward glove compartment when stopped for failing to use turn signal); *Wilson v. State*, 511 S.W.2d 531, 535 (Tex. Crim. App. 1974) (moved hand between seats when stopped for running red light); *see also Jenkins v. State*, 76 S.W.3d 709 (Tex. App.—Corpus Christi 2002, pet. ref'd); *Ramsey v. State*, 806 S.W.2d 954, 957 (Tex. App.—Austin 1991, pet. ref'd).

---

[4] We do not question the reliability of the information provided by the bystander Tambunga. *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (we give almost total deference to trial court's determination of credibility and historical fact). However, we emphasize that Tambunga's testimony is of limited value because he witnessed only a furtive gesture and not criminal activity.

The facts surrounding the search of Wiede's car are similar to those found insufficient to justify a search in *Wilson*. Wilson was pulled over by police for running a red light. *Wilson*, 511 S.W.2d at 532. As Wilson pulled over to the side of the road, the police officer witnessed Wilson make a move with his hand between the two seats. *Id*. The police searched where Wilson had moved his hand and discovered contraband. *Id*. Similarly, Wiede committed the traffic offense of failing to control speed when he collided with the truck. While awaiting medical assistance, he reached between the seat and console with a small unidentified object in his hand. Movements like Wiede's and Wilson's, even when coupled with a traffic offense, are not supportive of probable cause to search a vehicle "because of the ambiguous and potentially innocent nature of such movements." *Howard*, 599 S.W.2d at 604.

Moreover, we cannot conclude that Wiede's gesture, coupled with a traffic accident, constitutes "suspicious circumstances" that provided probable cause for the search. *See* Tex. Code Crim. Proc. Ann. art. § 14.03(a)(1) (West Supp. 2004-05); *Dyar*, 59 S.W.3d at 716-17. Section 14.03(a)(1) of the code of criminal procedure only provides that an officer may make an arrest without first obtaining a warrant when there are "suspicious circumstances." There must still be probable cause to make the arrest. *See Dyar v. State*, 125 S.W.3d 460, 464 (Tex. Crim. App. 2003). Furthermore, the record does not support a characterization of this collision as "suspicious." Wiede attempted but was unable to stop his vehicle when a heavily loaded 18-wheel truck turned onto the road in front of him; there is no evidence in the record that he was driving erratically or that he was intoxicated. By contrast, "suspicious circumstances" were found in *Dyar* where a seventeen-year-old driver was taken to the hospital after his car left the road and turned upside down, police had been

14

informed that Dyar was en route to Houston after "partying" for New Year's Eve, Dyar admitted to drinking alcohol and driving, and he appeared intoxicated. *Id*. at 461-62.

We also find no significant difference between Wiede's failure to stop for the truck and the failure to stop for a red light in *Wilson*. Although the United States Supreme Court has stated in dicta that vehicles are "exposed to traffic accidents that may render all their contents open to public view," *Houghton*, 526 U.S. at 393, we do not read this comment, or any other precedent, to establish a general exception to the Fourth Amendment's probable cause requirement for the investigation of traffic accidents. *See New York v. Class*, 475 U.S. 106, 112 (1986) ("A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile.").

We conclude that, even when viewed most favorably to the district court's decision, the totality of the circumstances presented at the hearing did not demonstrate that the unidentified police officer had probable cause to believe that Wiede's vehicle contained evidence of a crime. Without any additional evidence of intoxication or another crime, Wiede's furtive gesture after colliding with the truck amounts to only reasonable suspicion not probable cause. Nor can we cumulate this reasonable suspicion and a police officer's duty to investigate a traffic accident to satisfy the Fourth Amendment. The search of a vehicle by the police is permitted only when there is probable cause to believe the search will uncover evidence of a crime or when the search is justified under one of the few specifically established and well delineated exceptions to the Fourth Amendment's requirement of probable cause. The traffic accident that transformed Wiede's furtive gesture into reasonable suspicion of criminal activity cannot also elevate reasonable suspicion to probable cause.

15

**Community caretaking**

Absent probable cause, an officer's warrantless search may be justified as conducted in the course of his community caretaking function. *See Laney v. State*, 117 S.W.3d 854, 858-59 (Tex. Crim. App. 2003). The court of criminal appeals has stated that a court may consider evidence discovered by police who search property without warrants while acting in their roles as community caretakers under three doctrines: the automobile impoundment/inventory doctrine, the emergency doctrine, and the *Cady* doctrine. *Laney*, 117 S.W.3d at 861. Having established these exceptions to the Fourth Amendment requirement of probable cause, however, the court cautioned: "While we today recognize the existence of the community caretaking function in Texas, we emphasize its narrow applicability." *Wright v. State*, 7 S.W.3d 148, 152 (Tex. Crim. App. 1999); *see also United States v. Robinson*, 414 U.S. 218, 243 (1973) ("Exceptions to the warrant requirement are not talismans precluding further judicial inquiry whenever they are invoked . . . but rather are jealously and carefully drawn."); *Corbin v. State*, 85 S.W.3d 272, 281 n.7 (Tex. Crim. App. 2002) (Cochran, J., concurring) (emergency search must not be primarily motivated by intent to arrest and seize evidence and it is essential that courts be alert to possibility of subterfuge).

The State and the dissent assert that the search was conducted in the course of the officer's community caretaking function: assisting in Wiede's medical care and investigating an accident. We will explore all three types of community caretaking to see if there is support for the trial court's decision.

Under the inventory doctrine, police are permitted to search impounded vehicles to make an inventory of items in the car in order to protect the owner's property, to protect the police

16

from claims for lost property, and to protect the police from dangerous contents. *Opperman*, 428 U.S. at 369-70, 375. Under the emergency doctrine, police may conduct a search without a warrant if: (1) the officer's actions are totally divorced from the detection, investigation, or acquisition of evidence, (2) there is an immediate, objectively reasonable belief that the search is necessary in order to protect or preserve life or avoid serious injury, and (3) the scope of the search is strictly circumscribed by the facts of the emergency. *See Laney*, 117 S.W.3d at 861-62; *Gonzalez v. State*, 148 S.W.3d 702, 708 (Tex. App.—Austin 2004, no pet. h.). Items police discover in plain view during such a search in response to an emergency are admissible. *See Laney*, 117 S.W.3d at 863. By contrast, the *Cady* doctrine addresses almost exclusively warrantless searches and seizures of vehicles and does not require an imminent threat to a specific person's well-being. *Id*. at 861; *see also Cady v. Dombrowski*, 413 U.S. 433, 448 (1973) (search disabled car suspected of containing gun permissible because car was "vulnerable to intrusion by vandals").

First, the State concedes that no inventory was made. We therefore decline to uphold the search of Wiede's vehicle on the basis of the inventory doctrine. *See also Aitch v. State*, 879 S.W.2d 167, 172 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (When police remove one item from car and fail to compile list of other valuable items in plain sight, item not removed pursuant to an inventory.).

The record also does not support application of the community caretaking emergency doctrine or the *Cady* doctrine. The *Laney* standard for a search under the community caretaking emergency doctrine was set forth in the context of a search of a home. *See Laney*, 117 S.W.3d at 855 (search of private residence); *Gonzalez*, 148 S.W.3d at 704 (search of apartment). The court of

17

criminal appeals has also held that the emergency doctrine can justify the stop of a moving vehicle based on concern for an occupant. *See Wright*, 7 S.W.3d at 151. Factors in making a caretaking stop of such a vehicle include: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others. *Id*. at 152. We find these factors are also relevant to our consideration of whether the search was permissible in light of the emergency doctrine.

We apply an objective standard of reasonableness, taking into account all of the facts and circumstances known to the police at the time of the search. *See Laney*, 117 S.W.3d at 862. We independently scrutinize the facts without regard to the subjective conclusions of the police. *Johnson v. State*, 722 S.W.2d 417, 419 (Tex. Crim. App. 1986).

In *Wright*, a deputy sheriff stopped a car from which he had observed Wright leaning out of a rear window and vomiting. *Id*. at 150. The deputy had seen no violations of law before the stop, but testified that he stopped the car because he was concerned for Wright's safety and wanted to ensure that Wright was not being assaulted or denied medical attention. *Id*. After the stop, the deputy noted odors indicating consumption of alcohol and marihuana, and saw a partially smoked marihuana cigarette in plain view on the console between the front seats. *Id*. The court of criminal appeals vacated this Court's reversal of the trial court's judgment and remanded for analysis of the applicability of the four factors listed above. *Id*. at 152. On remand, this Court determined that the stop did not meet the test set out by the court of criminal appeals. *Wright v. State*, 18 S.W.3d 245, 247 (Tex. App.—Austin 2000, pet. ref'd). This Court wrote:

18

Appellant was a passenger in the rear seat of a car that was being driven in a lawful manner on a public highway. Appellant appeared to be having some gastric distress, but in addition to the driver, the other passenger in the car could have aided and assisted appellant. Nothing indicated that appellant's condition was any more serious than an upset stomach. None of the car's occupants indicated that they were in need of additional help. Nothing indicated that the deputy sheriff's assistance was necessary or that his help would add to the comfort or welfare of appellant. Nothing supported a reasonable belief that appellant was a danger to himself or to others.

The reasons for the stop given by the officer were unreasonably speculative and appear to be no more than an attempt through hindsight to justify the stopping and detaining of appellant. The totality of the circumstances did not justify official intrusion upon appellant's constitutional right to be secure in his person. The stop and detention of appellant was simply an unreasonable exercise of authority by the officer in violation of appellant's constitutional rights.

*Id.*

Applying the *Wright* factors to this case, we acknowledge that Wiede was seriously injured and in need of medical attention. However, at the time of the search, Wiede was outside of his vehicle and in the care of emergency medical personnel who were preparing to take him to the hospital. Thus, the *Wright* factors weigh toward a finding that the search was unreasonable because Wiede was not alone, had access assistance other than that offered by the officer, and did not present a danger to himself or others. *See Wright*, 7 S.W.3d at 152. Although Trooper McGuairt explained that he believed that Wiede might be under the influence of drugs, and that medical personnel treating Wiede should know of the possibility that Wiede was under the influence of drugs, we limit our consideration to the facts known to the officer, not his subjective conclusions. *See Johnson*, 722 S.W.2d at 419. McGuairt did not inform the medical personnel of the possibility Wiede was intoxicated, did not tell anyone else to tell them, and did not know whether anyone told them. There is also no evidence that the unidentified officer who conducted the search shared these concerns, that

19

the emergency medical personnel believed Wiede was intoxicated and asked officers to look for

drugs in the vehicle, or that Wiede's demeanor or the appearance of his car suggested he was under

the influence of any controlled substance. The fact that there was no attempt to relay the information

gained through the search to medical personnel belies the State's assertion that the search was

conducted out of concern for Wiede's welfare.[5] *See Provost v. State*, 631 S.W.2d 173, 175 (Tex.

App.—Houston [1st Dist.] 1981, pet. ref'd) (search of home was not justified out of concern for fire

inside when police first called the district attorney and delayed entry until after fire department had

extinguished fire).

The dissent contends that the search of Wiede's car was conducted incident to the

performance of a bonafide community caretaking activity. It claims "[t]here is no ready test for

determining reasonableness [of a search] other than by balancing the need to search against the

invasion that the search entails." *See Camara v. Municipal Court*, 387 U.S. 523, 534-35 (1967)

(warrant required for administrative search of private dwelling). Citing the dissenting opinion of one

judge of the court of criminal appeals, the dissent seeks to determine whether the search of Wiede's

car was permissible as community caretaking by balancing the public interest furthered by the search

against Wiede's right to privacy in his vehicle. *See Wright*, 7 S.W.3d at 155 (Meyers, J., dissenting).

Although these interests are balanced in examining whether a search is justified under a community

caretaking exception, we do not do so on an *ad hoc* basis. This delicate balance is reflected in the

---

[5] The dissent contends that we fail to defer to the trial court's assessment of credibility. However, the trial court could not have made a credibility determination regarding the officer's motivation for the search because the officer who actually conducted the search was not identified and did not testify.

20

standards set forth in the "few specifically established and well-delineated exceptions" to the Fourth Amendment's general requirements of a warrant and probable cause. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *Katz v. United States*, 389 U.S. 347, 357 (1967). Furthermore, Judge Meyers presented his balancing approach as an alternative to the majority opinion's "totality of the circumstances" test which established the *Wright* factors discussed above. *See Wright v. State*, 7 S.W.3d at 153. We therefore presume that the court of criminal appeals considered and specifically rejected establishing such a standard in community caretaking cases.

In the context of reviewing a search under the emergency doctrine we must determine whether: (1) the officer's actions were totally divorced from the detection, investigation, or acquisition of evidence, (2) there was an immediate, objectively reasonable belief that the search is necessary in order to protect or preserve life or avoid serious injury, and (3) the scope of the search was strictly circumscribed by the facts of the emergency. *See Laney*, 117 S.W.3d at 861-62; *Gonzalez*, 148 S.W.3d at 708. Although the dissent states that the search was incident to the community caretaking function, we find no specific and articulable facts which support that assertion. The methamphetamine was not discovered in plain view while police were in the course of assisting Wiede; he had already been removed from the car. Nor does the record support that the search was part of an investigation of the accident. The officers did not canvas the entire vehicle for information, but only conducted a narrow search for an item that a witness informed them he saw Wiede hide. Nothing in the record indicates that the officers had any reason to believe that the unidentified item had any relationship to the cause of the accident prior to discovering that it was methamphetamine. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (search unlawful at

21

its inception may not be validated by what it turns up); *Carver v. State*, 746 S.W.2d 869, 872 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (search "must be justified by what is known to police officers at the inception of the search and cannot be justified by evidence seized as a result of the search or arrest"). At best, the officers could only speculate that the hidden item was relevant to their legitimate community caretaking function. *See Janicek v. State*, 634 S.W.2d 687, 691 n.11 (Tex. Crim. App. 1982) (intrusions upon fourth amendment right to privacy to be determined "by the facts, not by rumor, suspicion, or guesswork"). Considering the totality of the circumstances, the record does not support a conclusion that the officer's search of Wiede's car was (1) totally divorced from the detection, investigation, or acquisition of evidence or that (2) there was an immediate, objectively reasonable belief that the search was necessary in order to protect or preserve life or avoid serious injury. *See Laney*, 117 S.W.3d at 861-62; *Gonzalez*, 148 S.W.3d at 708. The mere fact that Wiede was in a traffic accident and made a furtive gesture, absent any evidence indicating that he was under the influence of a drug, does not support a finding that the search was justified under the emergency doctrine. *See Laney*, 117 S.W.3d at 860; *Wright*, 18 S.W.3d at 247 (reasons given for stop were unreasonably speculative and appear to be an attempt to justify stop in hindsight).

The record also does not support the view that this search was permissible under the distinct *Cady* community caretaking exception. In *Cady*, the United States Supreme Court acknowledged that local police "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441. The court of criminal appeals

22

distinguished the *Cady* doctrine from the closely related emergency community caretaking doctrine because the *Cady* doctrine (1) does not require an officer to be acting only to preserve or protect life or avoid serious injury and (2) applies primarily to searches and seizures of vehicles. *Laney*, 117 S.W.3d at 861.

In *Cady*, an intoxicated police officer was involved in a car accident in another jurisdiction and lapsed into a coma. 413 U.S. at 435-36. Police towed his car to an unguarded private garage and later searched the car looking for the service revolver they believed the injured officer was required to carry; the searchers instead discovered evidence of a murder committed by the injured officer. *Id*. at 436-37. The Supreme Court held that, where the trunk of an automobile reasonably believed to contain a gun was vulnerable to intrusion by vandals, the search was not unreasonable within the meaning of the Fourth and Fourteenth Amendments. *Id*. at 448.

The search of Wiede's vehicle is easily distinguishable from *Cady*. As we noted earlier in this opinion, the record does not support the conclusion that the narrow search of only one area in the vehicle was "totally divorced from the detection, investigation, or acquisition of evidence." *See id*. at 441. Even if a search for drugs was permissible, the officer's belief that the Wiede's vehicle contained drugs was, at best, speculative. Furthermore, the fear that a small quantity of drugs may remain hidden in an unguarded car does not raise the same concerns for public safety that motivated the officers in *Cady* to search for a gun.[6] We therefore reject the contention of the

---

[6] The dissent attempts to expand the *Cady* exception by engaging in a balancing test between Wiede's privacy interest and the interest in the search. No court has characterized the *Cady* exception as a simple, case-by-case balancing test and we decline to do so. Nor does the *Cady* exception provide a general authority to search a vehicle involved in a traffic accident. Although police have a duty to respond to a traffic accident, render aid, and investigate its cause, the *Cady*

State and the dissent that the search of Wiede's vehicle was justified under the officers' community caretaking function.

Because the State did not establish that there was either probable cause to support the search of Wiede's vehicle, or that the search was justified under an exception to the Fourth Amendment's probable cause requirement, we hold that the trial court abused its discretion by admitting the methamphetamine into evidence. The admission of the methamphetamine undoubtedly contributed to the decision to revoke Wiede's probation. The error in its admission was thus harmful.

Wiede asserts, the State concedes, and we agree that the district court erred by revoking Wiede's probation for failure to pay fines and fees because the State waived those grounds.

Because the remaining issue concerning inadequate proof of the chain of custody of the methamphetamine would not require any greater relief, we need not address it.

**CONCLUSION**

The court erred by admitting the methamphetamine into evidence. The court also erred by revoking Wiede's probation for failure to pay fines and fees because the State waived those

---

doctrine only applies to those police actions that are in furtherance of the legitimate community caretaking function and "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441.

grounds.  Accordingly, we reverse the district court's order revoking Wiede's probation and remand

the cause for further proceedings not inconsistent with this opinion.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson:  Opinion by Justice B. A. Smith;
    Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed:   January 21, 2005

Publish